Lee, J.
It is not to be questioned that if Nicholas Staton was the legal owner of the slaves in controversy, and made the transfer to his sister Rosetta for the purpose of hindering, delaying and defrauding his creditors, the transfer was as to them utterly void; and upon his taking the oath of an insolvent debtor, *103 the sheriff became entitled to recover the slaves for the benefit of the creditors, from any one unlawfully detaining the possession of them. Upon this the cases of Shirley v. Long, 6 Rand. 735, and Clough v. Thompson, 7 Gratt. 26, may be regarded as decisive. And I think the facts proven by the evidence in these causes, and the inferences which a jury legitimately might and should make from them, are such as to present a case which cannot be satisfactorily explained, except upon the hypothesis of fraud on the part of Nicholas Staton in the transaction in question. At the time of the sale made by Commissioner Bocock, he was much embarrassed with' debts, there being unsatisfied judgments to a considerable amount standing against him, the executions upon which had been returned “no effects.” The slaves are struck off to him as the highest bidder; but being unwilling, for a reason which we are at no loss to understand, to complete the purchase by giving the requisite bond in his own name, he gets Tapscott to take his place as ostensible purchaser, and give his bond to the commissioner for the purchase money, and receive possession of the slaves, stating that he owed his sister Rosetta for washing, mending, &c., and that he wished to give her the slaves to compensate her. That he could have given the bond and the security required, in his own name, if he had chosen, may be fairly inferred from what Tapscott states: for he says he regarded N. Staton as perfectly good for the amount of the purchase money, and he had always found him remarkably punctual in meeting his engagements with him; and no doubt he would have been as willing to become his security if Nicholas Staton had chosen to give his own bond on the credit of the sale, as he was to make himself the convenient instrument in the arrangement which Nicholas Staton preferred to adopt. Tapscott retains possession for about three months, and Nicholas *104 Staton then pays over the amount of the purchase to ^m> ^k^g a receipt in the name of Rosetta Staton, was at that time about fourteen or fifteen years 0p age . anci -n a ¿ay or two after, Tapscott sends the slaves to the house of Beniamin Staton, the father of ° Rosetta, with whom she then lived. Now it does not appear whether at this time the credit of the commis- * sioner’s sale had expired, or whether Tapscott had A • paid for the negroes or not; but from his silence on this point, and from the questionable position which he occupies in relation to this affair, it might not be unwarrantable to infer that he had not then paid for the negroes, and that the payment, when made, was with the funds provided by Nicholas Staton himself.
As to the pretended consideration for the transfer of the slaves by Nicholas Staton to his sister Rosetta, I ‘think it comes in too questionable a shape to afford any sufficient support to the transaction. She was at the time a mere child, and it would seem very improbable that he could owe her any considerable sum for washing and mending. He is introduced as a witness indeed on the part of the defendant in the action, in each case, and he states that he purchased the negroes by-the direction of this young girl, and with them paid off the balance of the bond which had been assigned to her by her father. And though he does say that he owed her on other accounts for personal services, yet this is rather auxiliary and cumulative, and the stress of the consideration is placed on the balance due on the bond. But upon the demurrer to evidence, his evidence, so far as it conflicts with that of the plaintiff in the action, is, of course, to be disregarded; and if it were even to be taken into consideration, I think it entitled to not the slightest weight. It is true, the fairness of the bond executed by Nicholas Staton to his father for the hire of the watermen, or of the assignment of it by the father to Rosetta Staton, is not im *105 peached by the plaintiff, nor do I perceive anything in the evidence upon which either could be successfully assailed. The evidence of Tapscott proves that hiring of the three negroes for the year 1840, was a real transaction between Beniamin Staton and Ni-J cholas Staton; and the bond of the latter, produced by himself on his examination as a witness,-shows that . . . it was given for the amount of their hire. This bond Benjamin Staton had a perfect right to give to daughter, if he chose so to do; nor is there any one here questioning or entitled to question the validity of such a gift. But when Nicholas Staton spoke of his indebtedness to his sister at the time he procured Tapscott to take his place as ostensible purchaser of the slaves, and to hold them subject to his disposal, he made no allusion to any bond held by Rosetta upon him, but intimated that what he owed her was for washing, mending, &c.; and upon examining the bond produced by Nicholas Staton, it would seem that the balance due upon it had been paid off in cash, on the 10th of August 1842, before the purchase by Nicholas Staton at the commissioner’s sale, and some four months before he paid over the money to Tapscott. So that however justly he may have been indebted to Rosetta on account of that bond previously to the sale, he had at that time ceased to be so, having paid off the balance, and no doubt then having the bond in his own possession.
But it is said that the receipt endorsed on the bond is not proven, and that although there are four attesting witnesses, not one was called to testify concerning it. But what need of proof on the part of the plaintiff in the action? The bond, with the receipt endorsed upon it, is produced by the defendants and their witness, and the plaintiff certainly had the right to take it as they exhibited it. And if there was a mistake in the date of that receipt, as it is suggested *106 by the counsel there may be, it was for the defendants show it, I apprehend, not for the plaintiff to show was none.
j think the indicia furnished by the evidence, of the ^rue character of this transaction, are such as fully to warrant a jury in finding that it was a fraudulent arrangement made by Nicholas Staton for the purpose of screening the slaves from the creditors who then held unsatisfied judgments against him, by holding them out to the world as the property of Rosetta Staton; and that she was but a too willing instrument in his hands to effect his fraudulent purpose. But whether a willing or an innocent instrument, I conceive no substantial or valid consideration is shown for the transfer of the slaves to her, and that she can take no benefit from an arrangement tainted with the fraud too justly imputed to Nicholas Staton.
But it is said Nicholas Staton never had title to these slaves: that even if there was no debt due from him to Rosetta, and the money paid to Tapscott for them was his own money and not that of Rosetta, still he never had the possession of the slaves, because they wrnre delivered by the commissioner to Tapscott, and by him directly to Rosetta Staton ; and that the most that can be made of the case is that it is one of a resulting trust in the slaves for the benefit of the creditors, which they can only enforce in equity, but of which they cannot have the benefit in an action at law for the slaves themselves, in the name of the sheriff, for want of a sufficient legal title upon which to base such an action and recovery.. A purchase alone, it is argued, of the slaves without delivery of possession, will not pass a title to the purchaser.
This view in my judgment cannot be maintained. As already intimated, I look upon Tapscott as but the ostensible, while I regard Nicholas Staton as the real purchaser of the slaves: and Tapscott’s possession, if *107 (as I think a not unwarrantable inference,) the slaves were actually paid for with the money provided by Nicholas Staton, might be regarded as his so far as creditors were concerned, subject at most to Tapseott’s right to be indemnified against the bond which he had given. But if this were going too far, clearly I think after Nicholas Staton had paid over the purchase money to Tapscott, the possession of the latter during the interval between the payment and the delivery of the negroes to Rosetta Staton, was the possession of Nicholas Staton, and whether Tapscott had yet paid the amount of his bond to the commissioner or not, an execution against Nicholas Staton might. properly have been levied upon the slaves during that interval while yet in the hands of Tapscott. To this Tapscott could not object, for having received the money, his interest in the slaves had ceased by his own act and consent. Rosetta Staton could have no right to object: the money paid for the slaves was not hers, and she had not yet acquired the possession of them. So that there was no one who could successfully interpose to arrest a creditor in the pursuit of this property during that period, nor could his right to subject it to his debt be defeated by a subsequent transfer, except upon sufficient consideration, and untainted by the fraudulent purpose reprobated by the law.
I am of opinion, therefore, that the plaintiff did show a sufficient right to recover the slaves for the benefit of the creditors at whose suit Nicholas Staton took the oath of insolvency, against any and all persons unlawfully detaining them; and as Rosetta Staton claims both title and possession, and wholly denies any right in the plaintiff, she is clearly liable in the action against her. Nor do I think that her infancy at the time of suit brought and plea pleaded can protect her from a judgment^gainst her upon the demurrer to evidence. It is und\ ibtedly true that an infant cannot *108 appoint an attorney, nor appear or plead otherwise than by guardian; but waiving the question whether the can be made in this form, or whether the court must take notice of the infancy of the defendant whenever and however it is brought to its knowledge, it is equally true that the disability of infancy is a privilege Persoua^ ^be party, and which, after he attain his age, he may well waive if he please: And such a wajyer must pe intended in this case. For taking the evidence most strongly, as it must be taken, against the demurrant, it may be inferred that at the time of the argument of the demurrer and the rendition of the judgment in April 1848, Rosetta Staton had then attained her full age, and as she then proceeded by her attorney to the argument of the demurrer without making the objection of her previous infancy, it is to be considered that she waived her privilege, and sought the judgment of the court upon the merits of the case.
As it respects Benjamin Staton, however, I can perceiye no just ground upon which he should be subjected to a recovery in the action against him. As I have already intimated, there is no impeachment of the fairness of the- bond executed to him by Nicholas Staton, or of the assignment of the same by him to his daughter Rosetta. He is not proven to have had any connection whatever with the purchase of the slaves, or with the transfer of them to Rosetta. He has set up no claim to them in any form, nor exercised any act of ownership over them. Nor can he be said in any just sense to have had possession of them or to have detained them from the plaintiff. That he suffered his daughter to keep the slaves that she claimed as hers, at his house where she still lived, is a circumstance too slight and equivocal of itself to charge him with the grave responsibilities of an linlawful detainer from the right owner. It is not incompatible, but strictly consistent with perfect freedom from any par *109 tidpation in the fraudulent arrangement between the brother and sister, and with entire ignorance of its true character. 'What more natural than that a would permit his young daughter to keep slaves, that she claimed as hers by purchase or gift from her brother, upon his premises while she continued a member of his family ? He might be totally ignorant of any vice in the arrangement between them; or if a doubt had suggested itself, he might be neither able nor willing to take upon himself the unpleasant task of resolving it. The circumstance alluded to by the witness Haskins of the closing of the doors of the outhouses when he approached with the sheriff for the purpose of levying on the slaves, is left in too much uncertainty to constitute a sufficient ground on which to charge Benjamin Staton. It is not shown to have been done by his authority or with his knowledge, privity or consent. It does not appear that he was even at home at the time. Nothing is shown by which he can be fairly connected with it. That the premises were his cannot make him responsible for what might be done upon them without his authority; and for aught that appears, this closing of the doors might have been the act of the negroes themselves. The plaintiff might have readily placed Benjamin Staton in his true position by demanding to know if the slaves were withheld by his authority, and might then treat him as the nature of his response should direct. He made no such call, however, upon him; and under such circumstances, to charge Benjamin Staton with the consequences of an illegal detainer of these slaves, would be, as it seems to me, to convict a man upon bare suspicion of being privy to and participant in the unlawful act of others,, although remaining passive throughout, or at most, doing what perhaps almost any other father might do in similar circumstances, in permitting a child to keep property that she claimed, *110 upon Ms premises wMlst she was herself a member of family. The injustice in this case would be gross manifest. For if the plaintiff in the action should enforce hjg judgment against Benjamin Staton, by comPe^nS payment of the alternative value and damages found by the jury, and the costs,- he will be indemnity of any kind. Thus he is compelled to pay a large sum towards a debt of Nicholas Staton, • n *i*ip for which he was .never m any form responsible, for which he has received nothing in the form of an equivalent, nor can claim anything in the way of indemnity : and this for a transaction in which he is in no manner implicated, and without any proof that he has in any manner obstructed the plaintiff in the'pursuit of his remedies against those who were justly responsible to him.
I am of opinion, therefore, to reverse the judgment in each case; and in the case of Rosetta Staton, to render judgment against her on the demurrer to evidence, and in that of Benjamin Staton, to render judgment for the defendant.
Allen and Samuels, Js. concurred in the opinion of Lee, J.
Daniel and Moncure, Js. concurred in the opinion of Lee, J. as to Rosetta Staton; but they thought that the judgment against Benjamin Staton was correct.
Both judgments reversed.